UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MICHELLE BUTLER, DENNINE          :
CREWS and ANNMARIE McKIE          :
FELIX,                            ;
      Plaintiffs              :     CIVIL ACTION
                              :
      vs.                     :     No. 23-
                              :
SUNRISE SENIOR LIVING             :     JURY TRIAL DEMANDED
MANAGEMENT, INC.                  :
      Defendant               :

COMPLAINT

## I.    PRELIMINARY STATEMENT

1.    The Plaintiffs bring this action under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e *et seq.,* (Title VII), as amended, and the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.,* (PHRA), challenging their treatment and termination from employment opportunities by the defendant. The plaintiffs each had a history of satisfactory performance with the defendant, despite an atmosphere at the workplace of racial discrimination and hostility. On October 29, 2020, all three plaintiffs were placed on administrative leave for allegedly violating the defendant's Covid policy, when their conduct was consistent with the behavior of others who were not of their race and they had not violated the policy in fact. On November 4, 2020, they were terminated.

Plaintiffs seek a declaration to that effect. Additionally, they seek legal and equitable relief requiring the Defendant to compensate them for all the pay and other emoluments of employment they have lost or will lose as a result of the defendant's illegal actions, including but not limited to back pay and front pay, as well as compensatory damages.

They also seeks reimbursement for the attorneys' fees and costs they have incurred, and will incur, in the prosecution of this Action.

## II.    JURISDICTION AND VENUE

2.    The Court has jurisdiction under 28 U.S.C. Sec. 1331 as the plaintiffs' claims arise under federal law.

3.    Venue lies in this court pursuant to 42 U.S.C. §12117(a) because the events that give rise to this Action took place in this district.

## III.    PARTIES AND ADMINISTRATIVE PRECONDITIONS

4.    Plaintiff.  Michelle Butler, is an African-American person residing in West Chester, Pennsylvania.

5.    Plaintiff, Dennine Crews, is an Afircan-American person residing in Wilmington, Delaware.

6.    Plaintiff, AnnMarie McKie Felix, is an Afircan-American person residing in Orlando, Florida.

7.    Defendant, Sunrise Senior Living Management, Inc., is a business corporation with its principal place of business in <McLean, Virginia, which operates a location known as Sunrise of Westtown located in West Chester, Pennsylvania.

8.    The defendant has, at all relevant times, employed more than 15 persons and more than four persons in Pennsylvania.

9.    In 2020, all three plaintiffs were employed by the defendant at Sunrise of Westtown.

10.    The plaintiffs filed complaints of racial discrimination with the

Pennsylvania Human Relations Commission (PHRC) on May 3, 2021, which was within 180 days of the last acts of discrimination relevant to their claims.

11. Each of the plaintiffs' claims were also filed with the Equal Employment Opportunity Commission (EEOC).

12. On or about November 17, 2022, the EEOC issued a Notice of Right to Sue to each of the plaintiffs.

## IV. FACTS

13. The senior manager at Sunrise at Westtown at all relevant times during 2020 was Jill Kerrigan, a white person.

14. Ms. Kerrigan's superior at all relevant times during 2020 was Regional Director of Operations Keelan McCurdy, a white person.

15. For several years, the work environment at the said location has been racially discriminatory in character. Ms. Kerrigan and Mr. McCurdy have been heard in conversation to the effect that they do not like the staff at the West Chester location, which is overwhelmingly African-American. Mr. McCurdy has referred to plaintiff Dennine Crews, as an "angry black woman," and told plaintiff AnnMarie Felix that he did not like her, and that he had plans to dismantle the department because he had heard that it contained "angry black women."

16. In addition, the Respondent has tolerated racially hostile behavior directed at African-American employees. Examples include:

a. In June, 2020, a resident addressed plaintiff Dennine Crews, an African-American employee, as "n*****" and "black b****," and threatened to hit her on the head with his cane. This incident was reported to Ms. Kerrigan and Mr. McCurdy. Their response was to state that if things got worse, Ms. Crews would have to be

transferred. This was despite the fact that the resident had no diagnosis of dementia (although he did have a history of alcoholism). Ms. Crews was not contacted regarding her anxiety or advised as to how to protect herself from the resident.

b. In October, 2020, another resident repeatedly used the word "n*****." This resident also had no diagnosis of dementia and the behavior was confirmed to management by several employees. No corrective action was taken.

17. The enforcement of policies and administration of discipline has also been racially discriminatory in character. For examples:

a. African-American employees were required to submit request forms to take paid time off (PTO) but white employees, including Ms. Kerrigan, were often not required to do so.

b. In March, 2020, plaintiff Michelle Butler had a discussion with a Chester County Hospital physician, which became heated on the part of both participants. The Complainant suggested to the physician that she "clean out her ears." The Complainant was given a written notice for this on March 10, 2020. In contrast, a white employee had a verbal and physical altercation with an African-American employee on March 4, 2020, concerning which the white employee admitted to losing her composure, but the white employee was not disciplined at all. Moreover, in January or February, 2020, a white care manager threatened other staff members who reported her misconduct by saying there would be "hell to pay" if they did so again, but was given only a written notice, despite the fact that she had already received a "final" written notice. On July 13, 2020, a white employee told the Regional Care Director that he was "full of s***," but was not disciplined.

c. On or about November 13, 2020, The Business Office Coordinator sent an African American employee for drug testing because she thought he "looked high" but, in June, 2020, a white nurse who was thought by Ms. Kerrigan to display high strung and erratic behavior, and who had a known history of benzodiazepine abuse when hired in May of 2020, was not tested.

d. African-American employees were often told that their wages were capped and denied pay increases, although their wages were lower than some white employees who had less seniority. African-American nursing applicants received lower starting wage offers than newly hired white nurses, with their attempts to negotiated for a higher rate rejected.

18. As a result of the Covid-19 pandemic, before May of 2020, the Respondent notified employees that, if they travelled outside of Pennsylvania, they were not to return to work without the results of two negative tests for Covid-19. There was no prohibition on travel and, in fact, Ms. Kerrigan travelled to Colorado herself. At least one other white employee travelled to Georgia after May and before October of 2020. They were not required to stay away from work after their return.

19. An African-American employee, Talonda Coleman, was required to miss work for two weeks after returning from a trip to Florida on September 28, 2020, despite having two negative tests for Covid-19.

20. In October, 2020, the plaintiffs and another African-American co-worker, Lucy Maina, took a vacation to Los Cabos in Mexico. Ms. Kerrigan was informed of this planned trip in advance.

21. Upon their return from the vacation, each of the four employees had a negative test for Covid-19 and supplied the results to the Respondent. Ms. Maina supplied two negative tests.

22. The plaintiffs and Ms. Maina were, however, all placed on administrative leave on October 29. 2020.

23. As a result of the said action, the plaintiffs have suffered lost wages and other compensation of employment, as well as emotional distress ad embarrassment.

## CAUSES OF ACTION

## COUNT I – HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

24. The averments of paragraphs 1-23 are re-alleged and incorporated by reference.

25. The environment in which the plaintiffs worked throughout 2020 and for some time beforehand was severely and pervasively hostile based on race such that it altered the conditions of employment for a reasonable person.

26. The defendant thereby violated 42 U.S.C. §2000e-2(a).

## COUNT II – HOSTILE ENVIRONMENT IN VIOLATION OF PHRA

27. The averments of paragraphs 1-26 are re-alleged and incorporated by reference.

28. The defendant therefore also violated 43 P.S. §955(a)

## COUNT III – WRONGFUL TERMINATION IN VIOLATION OF TITLE VII

29. The averments of paragraphs 1-28 are re-alleged and incorporated by reference.

30. The suspension and termination of the plaintiffs were in violation of 42 U.S.C. §2000e-2(a).

## COUNT IV – WRONGFUL TERMINATION IN VIOLATION OF THE PHRA

31.  The averments of paragraphs 1-30 are re-alleged and incorporated by reference.

32.  The defendant therefore also violated 43 P.S. §955(a).

**WHEREFORE,** the Plaintiffs respectfully pray and request:

a.  a declaration that the defendant's conduct was unlawful;

b.  back pay in the amount of their lost earnings, including the value of employee benefits;

c.  front pay for any period of time needed to establish the level of compensation each plaintiff would have received if not for the defendant's unlawful actions;

d.  compensatory damages;

e.  punitive damages; and

f.  attorneys' fees and costs.

William T. Wilson
Attorney ID # 41793
20 West Miner Street
West Chester, PA 19382
383-605-1146
bill@wtwilsonlaw.com